All right. Our second case this morning is United States v. Duane Waupoose, and we will have Mr. Stewart at the podium. Good morning. May it please the Court. Good morning, Your Honors. My name is Donnie Stewart, and I represent Mr. Duane Waupoose, Jr., the Waupoose family at their home shortly before the night. After the gang leader, Cory Grignon, shot and wounded Waupoose and several family members, Waupoose, in an act of self-preservation and defense of others, killed Grignon. The issues this case presents to the Court today involve the self-defense and defense of others jury instruction, the constructive amendment, and the ineffective assistance of counsel. I would like to focus on the self-defense and defense of others jury instruction issue and any questions that you may have. Turning to the jury instruction issue, the trial court erred in refusing to administer the jury instruction requested by Waupoose and his trial counsel. This court reviews a failure to give a requested instruction de novo, and based on this court's precedent, the standard of, or the quantum of evidence required to present a jury instruction is not high. As the Feather case found that some evidence supporting each element would be enough to administer the requested jury instruction, and the McGill case found that an evidentiary foundation, however tenuous, was sufficient. Let's look at that last element. What facts did the court, or maybe what facts the court, did not consider to demonstrate that Grignon continued to be a threat? Yes, Your Honor. Grignon continued to be a threat because during the encounter, even after Waupoose took the weapon from Grignon, Grignon was continuously fighting back. That was stated in Waupoose's trial testimony. In addition to the fact that he was running towards the van where him and his armed group had just emerged from, and there was another person located in that van, so Waupoose had a reasonable belief that there was further harm to come from Grignon reaching that destination, which is why he was still fighting Grignon in that moment. And based on how quickly everything happened, it was difficult to determine when the eminence would have subsided. And to stick with the eminence prong, this court in Sahakian stated that eminence requires more than a generalized fear of attack from an unknown or unspecified assailant at some unknown time in the future. And all of these factors were met in this case. With there not being a generalized fear of attack, Waupoose and his family were being attacked by Grignon and his gang, multiple of them being armed at the time. Additionally, there were no unknown assailants. Waupoose knew exactly who was attacking himself and his family, and that was Corey Grignon and the members of his group. And it wasn't at some unknown time in the future, it was presently happening in that moment. Additionally, while the trial court relied on the Feather case, in addition to the Sahakian and Tekosh cases, those were all readily distinguishable from this case because they all took place in the controlled prison environment where law enforcement was readily available to render assistance to the defendants in that case. However, this took place on a quiet residential street around midnight and there was no law enforcement available at the time. And to move to the no reasonable legal alternative, which is the second prong that the court considers for a self-defense case, the reasonableness as this court is held in Smith is seen from the circumstances of the defendant at the time. And one thing that has been constantly emphasized by Waupoose during the hospital interrogation and his trial testimony was how quickly everything happened in that encounter. Grignon shot Waupoose and Waupoose was able to react prior to being shot in the face by Grignon because he saw Grignon's finger move setting the gun to fire. But after that moment, everything happened quickly between Waupoose being shot and Grignon being killed. And based on that quickness, it was difficult for Waupoose to determine when or any reasonable legal alternative because there was none. As the Supreme Court has considered in the Brown v. United States case that we quote in our brief in 1921, the fatal blow in this case followed close upon the others while the heat of conflict was on. So that's why there was no reasonable legal alternative because that conflict was still presently happening at the moment up until Waupoose killed Grignon and even a little after that. And here, if the jury credited this defendant's testimony, they could have found in his favor on this issue. So the judge not providing that self-defense jury instruction was crucial in this case as this was all things for the jury to consider ultimately in ruling on this issue. I will move on to the constructive amendment issue and the court reviews constructive amendment for plain error in this case because this issue was not raised at the trial court below. The indictment in this case was constructively amended because as the Fifth Amendment provides, no person shall be held to answer for a capital or otherwise infamous crime unless on presentment of indictment by the grand jury. And based on the grand jury indictment and count two of the indictment, the use of a short-barreled shotgun became an element of the assault with a dangerous weapon charge. However, the trial court and the government in this case constructively amended that by omitting that language when reading out the indictment to the jury. Why would this not be a variance instead of a constructive amendment? Your Honor, this would fall under the constructive amendment rather than variance based on the Lightnum case and how Lightnum views the issue of constructive amendment where it's the broadening of the chart or the basis of conviction. But we have to look at the language in Sun that kind of defines, there's a doctrinal, a thin doctrinal line between a constructive amendment and a variance. And so I want to, before we look at the Litman case that found two guns, Mossberg, two different rifles here, we have one gun being described, one gun being described by Wapus, one type of gun being described by the government. And so I need to kind of drill down on what were the facts or why would this not have been just a different set of facts versus what you're arguing here is that there was a different offense? Your Honor, based on the jury's ultimate finding in the special verdict that there was no short barreled shotgun, even with there only being one firearm considered in this case, it would be a different charge because how the Lightnum case decided that that distinct language became a part of the element of the assault with a dangerous weapon charge. So that makes the circumstances. Did they not establish, and I guess that's why we have to spend some time talking through, whether or not you're arguing a constructive amendment or are you arguing that there was a variance? Because are you disagreeing that the jury found that there was a firearm used? Your Honor, there could be some disagreement there because Wapus was said to have killed Grignon using the stock of the firearm and based on the definition of firearm, stock is not included in that language. So there could have been a finding that there wasn't, he didn't use a firearm in that case, which is what would explain why the special verdict from the jury found a short barreled shotgun was not used in that case. And so the constructive amendment, I'm just trying to make sure that I appreciate, what is the different offense, if we follow your argument, what is the different offense that the jury found in this case? So based on the way that the indictment was amended during trial, they just found assault with a dangerous weapon, which is a lot broader than assault with a short barreled shotgun, which is what the government charged in this case. So it just broadened the basis of conviction past what the grand jury would have foreseen. And so again, you have to, you have to be able to explain why was this, what you've just defined is a variance. The facts change, but did the elements change of what the government proved? Yes, Your Honor, as the short barreled shotgun was an element, and the jury found that the government didn't prove that that element wasn't there, even though they convicted based on the constructive amendment. And to go into the Lightening case a little bit, as you mentioned, that had, the Mossberg rifle was what the government charged in that case, but the constructive amendment occurred when the court found that they could use or the government could convict if there were any firearms that were used in the conviction of that or the occurrence of that crime. However, in this case, it was even clearer of a constructive amendment as it went from the short barreled shotgun, which is a specific type of firearm, similar to Lightening, to any dangerous weapon, which went outside of the realm of any firearms, which is why it was such an issue in this case. And the government relied on count two as a predicate for count three. So with that constructive amendment, and the jury finding that there was no short barreled shotgun used, if there was no basis for conviction on count two, based on that finding, there would also be no basis for conviction on count three, which is why the constructive amendment here is so troubling. And to go into the plain error analysis a little bit. There was an error here, as the impermissible constructive amendment occurred. And that error was clear, which this court finds that an error is clear if it's of such an obvious nature that the trial judge and prosecutor were derelict in not count or in countenancing it, even absent the defendants timely assistance in detecting it. And the government admitted in its brief on page 40, that the jury instructions for count two should have referred to a short barreled shotgun specifically, showing that this error was clear, and there should have been the correct instructions provided. Additionally, as shown from page 222 of the trial transcript, it is unclear whether the jury was actually given the indictment when they went back for deliberation. So there was no corrective measures that were taken to make sure that this constructive amendment didn't actually prejudice the outcome here. But counsel, I'm a little stuck on the prejudice prong. What, since there was only evidence of that one gun, what would the prejudice be? The prejudice would be resulting from the jury's finding on the special verdict that there was no short barreled shotgun. So count two is the only predicate, and that was the only basis. I think you're overstating or mischaracterizing the special verdict form. The special verdict form simply said that Wapoose did not brandish a firearm, and that the firearm in question was not a short barreled shotgun, meaning the type, which could have to do with the length of the barrel, etc. Not that there was some other firearm used. Yes, Your Honor, that's correct. There's no other firearm used. It's just the fact that the jury found it wasn't a short barreled shotgun was used to commit that crime, then there was no basis of conviction based on the jury's determination. But again, there's no prejudice. There's no other evidence of any other kind of a firearm. The jury obviously found that he used a firearm to beat the victim to death. And the quarrel over what type of firearm it is may have departed from the variance or variation doesn't cause any prejudice here because there's no other firearm that it could be. Your Honor, that goes back to the finding of whether a firearm was actually used based on the definition of firearm. However, the way that the jury characterized the evidence and how they saw what it was presented, the jury found that it wasn't a short barreled shotgun that was used. And based on the government's own initiative in charging that as an element of count two, the jury's finding would make it so count two had no basis otherwise. And that's where the prejudice lies. I was saying the evidence was that there was a single shot sawed off shotgun. While Mr. Walpoose owned that, I used, I pulled the single barrel shotgun away from Mr. Grenon and the government argued in closing the same evidence, the same gun. So what is the prejudice? The prejudice just goes back to the jury's ultimate finding, because even with the government's presentation of the evidence, the jury found differently. And if the jury was able to find differently in the special verdict on count three, with the appropriate language, the jury could have also so found differently on count two. I'd like to reserve the rest of my time. That's fine. Thank you. May it please the court, Rebecca Tableson on behalf of the United States. Dwayne Walpoose had a fair trial. A jury of his peers heard and considered the entire factual context of Corey Greno's death. They heard it from Walpoose himself, his entire hospital interview and his unrestricted trial testimony. Walpoose was represented by the attorney of his choice who cross examined the government's witnesses and who made sure that Walpoose's version of the facts was in front of the jury. And he had some success. The jury returned a mixed verdict and Walpoose got a bottom of the guideline sentence. Walpoose now seeks a redo, but none of his claims warrant it. First, as to ineffective assistance, he has all but abandoned his chronic claim and he cannot satisfy Strickland, particularly not on plain error review and with no relevant record below. Second, as to the jury instructions on self-defense, Walpoose's own account of how he killed Greno did not meet the legal elements of self-defense. Walpoose killed Greno after he had run dozens of yards down the road past the van in a third beating incident. Dozens of yards away from the original confrontation when Greno was totally unarmed, when he was not resisting in any way. Does the theory that's been proposed in oral argument support, is it supported by the evidence that if Mr. Grenon had made it to the van, he would have been able to access additional firearms? That was, Walpoose's speculation was that there was someone else in the van or additional firearms. Even if that was true, it is irrelevant here because there were three beating incidents. Let me just be clear about this. So, the gun is discharged, Walpoose grabs it, he beats Greno for the first time with the gun. Greno starts running away. He gets to the van, which is at the end of the driveway, before Walpoose catches up with him there. This is the second beating. Walpoose then beats Greno again with the gun there. But that is not when he kills Greno. Greno then gets away again and runs dozens of yards, 30 to 40. This is undisputed in the record at trial. Down the road, past the van, before Walpoose catches up with him again. At that point, Walpoose beats Greno to death with the short-barreled shotgun. Undisputed testimony at trial and from Walpoose's hospital statement that Greno at that point is on the ground, on his butt, with his hand in the air. In the hospital, Walpoose said it was because he was trying to deflect the blows. At trial, Walpoose said it was because he had fallen down because Walpoose had hit him. But there's no dispute in the record where these things happened and the sort of key facts surrounding the final, fatal beating. Counsel, is there any question based on the record that Greno was attempting to get to the van? It's simply unclear.  And so, you know, Greno would have been fleeing in that direction no matter what. He certainly never got into the van. Could a reasonable juror have decided that based on Walpoose's testimony, Greno was attempting to get to the van? Potentially, but not at the point when, you know, Greno kept running past the van 30 to 40 yards down the road. At that point, no. Greno was well past the van and no reasonable juror could have concluded that he was going to, I don't know, turn around and run back into the van. And when Walpoose caught up with him, again, he's 30 to 40 yards down the road, past the driveway, past the van. That is where the fatal beating occurs. I think, you know, as this court observed in Sahakian, the self-defense defense is reserved for extraordinary circumstances and a truly eminent use of lethal force is required. And I think it's important to recognize in this case that Walpoose was charged in a way that was very sensitive to the entire context of the factual circumstances of Greno's death. Walpoose's hospital statement arguably could have supported a murder charge under Section 1111 because he described those three different beatings. And he explained that in the beating on the road, the fatal one, he kept beating Greno until he, quote, saw him die. But he was not charged with murder. Instead, he was charged with manslaughter in the heat of passion. The elements there are a passion of fear, rage, or anger that caused the defendant to lose self-control and act upon impulse without self-reflection as a result of circumstances that would provoke such passion in a reasonable person, but which did not justify the use of deadly force. I'm quoting there from the jury instructions, transcript 201-2. So under that charge, the room for a self-defense argument is quite narrow. It is not a defense that Walpoose was legitimately provoked. That's actually an element of the crime. And it's also not a defense that Walpoose was acting in the heat of passion. Again, that's an element of the crime. So this is not a situation where Walpoose was charged with murder and could argue, no, no, no, I didn't have the malice required for murder because I was simply responding in the heat of passion to this very tense and unfortunate event.  And to be clear, the government also charged people on the other side of this altercation with instigating it, with assault, with threats. At the point that Walpoose killed Greeno, though, no reasonable juror could find self-defense. Self-defense was over at that point. It was manslaughter. I'll turn to constructive amendment. This court has been very clear that an insufficiently specific jury instruction, standing alone, is not a constructive amendment. Instead, the evidence at trial must also be at least ambiguous to amount to a constructive amendment. And it was simply the opposite was true here. Walpoose himself testified that he beat Greeno to death with a short-barreled shotgun. He possessed no other weapon of any kind. And as a result, the count to present it at trial was the same as the count to present it to the grand jury. Judge Pryor, I want to take a crack at your questions about a variance versus a constructive amendment. And I think, shooting totally straight with you, I'm not sure Leichtman has this perfectly right. You're not sure? I'm not sure Leichtman has this perfectly right. And it's not the same as the approach at all. Not every circuit follows the same approach as Leichtman. That being said, I do think that under Leichtman and Pearson and cases like that, this court does call the slippage between, say, a firearm and a particular firearm, this court does call that a constructive amendment. Again, I'd be happy to submit further briefing on whether that's right from first principles. But it is true that if an indictment says you used a specific firearm, and the jury instructions just refer to a firearm more generally, and the evidence at trial is ambiguous as to which, let's say there's three guns presented at trial, then you can have a constructive amendment. All that being said— But is the jury able to constructively amend an indictment? Is that not left to the grand jury to supersede? I think the logic of Leichtman is that there's a sort of implicit amendment to the indictment. If the indictment specified a particular firearm and the jury instructions do not, and the evidence at trial was such that the trial jury could have been relying on a different firearm than the one charged in the indictment, even though technically we don't think of the specific firearm as actually being an element of the crime, strictly speaking. But you can make it—the U.S. Attorney's Office can make it an element when they include it in the indictment. That is the logic of Leichtman. Yes, exactly. Exactly. So I think that opposing counsel is right under Leichtman and Pearson to talk about this as a potential constructive indictment. It just isn't because under Leichtman and Pearson, you also need the evidence at trial to support that sort of ambiguity in order to find a constructive indictment. And the fact that this is a plain error case makes the constructive amendment analysis particularly easy here because there's simply no risk of prejudice. This was not an issue in dispute at trial at all. There's no suggestion that Mr. Wapus' defense would have differed had the jury instruction referred to the short-barreled shotgun. If anyone had raised this to the trial court, the judge would simply have corrected it in a heartbeat and nothing would have changed. Was there something odd about the gun or the jury instruction about what is a sawed-off shotgun or a short-barreled shotgun that gave the jury a head fake on the special verdict? You know, Chief Judge Sykes, no. I think the truth—I think the best way to describe the verdict is it's a mixed verdict. As the Supreme Court recently observed in McElrath and has said before, a jury has an absolute right to return a verdict that is potentially self-contradictory. And I think that's what happened here. And as the Supreme Court observed in McElrath, that can be for a lot of reasons, such as lenity, compromise, misunderstanding, and we simply cannot scrutinize that. The jury's convictions and its acquittals are inviolate. And here—I mean, Wapus himself testified that he, you know, brandished and used a short-barreled shotgun to beat Greeneau to death. No, I don't think that's quite right. I think this is where the confusion comes in. We're using different terminology. Wapus said, I used a single-shot, sawed-off shotgun. And closing, the government owned that language of a single-shot, sawed-off shotgun. Is there any instruction by the jury, by the court, or by the government that suggests that that gun, a single-shot shotgun, is the same as a short-barreled shotgun? I looked at the ATF expert testimony that was presented, and I don't know if that connection was made for the jury. Yes, thank you, Judge Pryor. I mean, let me tell you what there was. There was a witness who testified who measured the components of the gun, and then there was an instruction to the jury defining a short-barreled shotgun as, you know, a barrel less than 18 and the whole thing less than 26 inches, I believe, and that tracked the testimony that the jury had heard measuring the pieces of the gun. So that is what there was. And potentially, our closing argument should have connected the dots more clearly for the jury. I think the truth is this was simply not an issue in dispute at trial, and so maybe no one was paying terribly much attention to it, you know, rhetorically when you're making your closing argument. But the evidence was all there in front of the jury. And it's true that Mr. Wapus, I don't think, used – I can't remember all of his – didn't use the legal terminology, you know, short-barreled shotgun, but he certainly described the event in a way that was consistent with all the other evidence, which was, you know, I beat Corey with this gun, and the only gun in evidence was the one that was measured by the witness who explained that it, you know, satisfied the definition legally of a short-barreled shotgun. So, you know, I think it's hard to know what to make of the answer to those special verdict forms, and the truth is probably the Supreme Court's wisdom on this is the best answer, which is we just have to leave them where they lie. There's no – it's error to try to sort of rationalize the jury's verdict for it. That's exactly the type of error that led the Georgia Supreme Court awry in McElrath. If the court has no further questions, I'll just summarize for a moment. This was a fair process with a fair result, a tragic story, but Dwayne Wapoose was legitimately provoked, and he did start off defending himself. But by the time he chased Greeno down the driveway, past the van, 30 to 40 yards down the road, deadly force was no longer justified. It was manslaughter, and if the court has no further questions, we would ask that you affirm judgment below. Thank you. Mr. Stewart, you have a little bit of time left. Your Honors, I have a few points on rebuttal. To go back to the self-defense issue, as Judge Kohler mentioned, the jury should have decided the self-defense issue in this case. The government admitted in its opening statement that this occurred over the course of a few moments and essentially in front of one home. Everything happened quickly, so the government's contention that these were three separate events rather than one continuous event that happened quickly is incorrect. Additionally, mentioning the hospital interrogation, the purpose of that was different. The officers were collecting evidence on who to charge. They never asked if Wapus was in fear of his life or any other things that could aid in self-defense determination ultimately. Also, self-defense could have applied to the second count of assault with a dangerous weapon. Your Honor, I see I'm out of time. You can conclude your argument. Go ahead. And quickly to the constructive amendment point, as Judge Pryor mentioned, the short-barreled versus single-shot shotgun language aided to the confusion of the jury. And as this court mentioned in Pearson, the government created an exit ramp and there was nothing throughout the course of the trial that blocked the exit ramp. Instead, it encouraged the jury to take that exit ramp in finding Wapus guilty on count two. So for these reasons, based on the self-defense jury instruction issue, I would ask that this court reverse and remand for new trial or to the constructive amendment issue that this court vacate counts two and three and remand for re-sentencing. Chief, with your permission, may I ask about the ineffective assistance of counsel? Are you still pursuing that on direct? Yes, Your Honor. Wapus believes that the ineffective assistance of counsel issue was right for a direct appeal and based on the record below and the many inconsistencies and errors on part of trial counsel makes this the proper vehicle. Thank you. All right. Thank you. Our thanks to all counsel. The case is taken under advisement.